IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**TYRONE JAMES WALKER**                                              **PLAINTIFF**

**V.**                                 **CIVIL ACTION NO. 3:17-cv-57-JCG**

**WARDEN FRANK SHAW et al.**                                 **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTIONS BASED ON PLAINTIFF'S FAILURE TO EXHAUST
ADMINISTRATIVE REMEDIES AND FINDING MOOT CENTURION OF
MISSISSIPPI, LLC'S MOTION TO DISMISS**

BEFORE THE COURT is the Complaint filed by Plaintiff Tyrone James Walker, a postconviction inmate in the custody of the Mississippi Department of Corrections (MDOC). Plaintiff is proceeding *pro se* and *in forma pauperis.* An omnibus hearing, which also operated as a *Spears* hearing,[1] was held on July 27, 2017.[2] Defendants Warden Frank Shaw, Warden Norris Hogans, and Warden Ray Rice have filed a Motion for Summary Judgment based on Plaintiff's Failure to Exhaust Administrative Remedies (ECF No. 41). Defendant Centurion of Mississippi, LLC (Centurion) has filed a 12(b)(6) Motion to Dismiss (ECF No. 34) and a Motion for Summary Judgment Based on Plaintiff's Failure to Exhaust Administrative Remedies (ECF No. 43). Plaintiff filed a Response (ECF No. 49) to

---

[1] *Spears v. McCotter,* 766 F.2d 179 (5th Cir. 1985).

[2] At the omnibus hearing, Plaintiff voluntarily dismissed the claims against Management Training Corporation, Major Michael Rice, Tony Compton, and former MDOC Commissioner Marshall Fisher. Pamela Robinson and Michelle Jackson's Motion for Summary Judgment (Failure to Exhaust Administrative Remedies) was granted on November 29, 2017, and these Defendants have also been dismissed.

the Motions alleging that he failed to exhaust administrative remedies. He did not respond to Centurion's Motion to Dismiss.

Having considered the submissions of the parties, the record, and relevant law, the Court finds that while Plaintiff did complete the two-step administrative process, he did not exhaust administrative remedies with respect to the specific claims advanced against Warden Shaw, Warden Hogans, Warden Rice, and Centurion. These Defendants' Motions alleging failure to exhaust administrative remedies must be granted. Centurion's 12(b)(6) Motion will be denied as moot.

## BACKGROUND

Plaintiff filed this action pursuant to 42 U.S.C. § 1983, alleging that his constitutional rights were violated during his incarceration at East Mississippi Correctional Facility (EMCF). Plaintiff's Complaint concerns two separate incidents, one on September 4, 2016, and the second on November 30, 2016.

According to Plaintiff, he has an Axis-1 mental illness and was improperly assigned to "high risk" housing. (ECF No. 1, at 7; ECF No. 48, at 11-15). On September 14, 2016, "an altercation erupted among several inmates" on Plaintiff's "high risk" housing zone. (ECF No. 1, at 7). Plaintiff maintains that he attempted to diffuse the situation by intervening and as a result, he was stabbed by another inmate. (ECF No. 1, at 7; ECF No. 48, at 12-15). An EMCF investigation concluded that Plaintiff was involved in stabbing another inmate. (ECF No. 5-6). As a result of his involvement in the September 14, 2016, altercation, Plaintiff was placed in a one-man cell in long-term segregation. *Id.* Plaintiff alleges that EMCF officials

2

violated their written policies in numerous ways by improperly housing him as "high risk," placing him in a one-man cell in long-term segregation, and ignoring his rights as a psychiatric patient.

The second incident occurred on November 30, 2016. Plaintiff was in long-term segregation, and Defendants do not dispute that force was used against Plaintiff. (ECF No. 7, at 8). The use of force arose after food was delivered through Plaintiff's food tray slot and Plaintiff admits that he "wouldn't close it." (ECF No. 48, at 39). Plaintiff "held his arm out of the tray-slot" to prevent it from being closed. *Id.* Lieutenant Richard Cooney responded by summoning Mr. Pickering, a mental health counselor, but at some point Lieutenant Cooney used pepper spray on Plaintiff and purportedly locked Plaintiff's tray slot for hours while Plaintiff was left "burning" and not allowed a shower or medical treatment. (ECF No. 1, at 8; ECF No. 48, at 17).

When Lieutenant Cooney returned to remove Plaintiff and take him to medical, Plaintiff contends that Lieutenant Cooney slammed him to the floor and punched him in the neck and face while Plaintiff was restrained. (ECF No. 1, at 8; ECF No. 48, at 17). Lieutenant Cooney allegedly put his knee on Plaintiff's neck and allowed another officer to strike Plaintiff in the face. Plaintiff maintains that officers took turns assaulting him. (ECF No. 1, at 8).

Lieutenant Cooney ordered that Plaintiff be placed in a restraint chair, and Plaintiff maintains that he was left in the restraint chair for four hours. (ECF No. 1, at 7-9). Plaintiff was then taken to Rush Hospital, and someone there allegedly

recommended that Plaintiff have an MRI. (ECF No. 48, at 18, 35). According to Plaintiff, Centurion, the company providing medical services at EMCF, would not allow him to have an MRI, and Plaintiff was told that he would have "to go through MDOC to get treatment." (ECF No. 48, at 28).

Plaintiff was issued a rule violation report for refusing to close his tray port on November 30, 2016, resulting in use of force, and then becoming physically combative, resulting in further use of force. (ECF No. 1-1, at 22).

## DISCUSSION

A. <u>Summary Judgment Standard</u>

Summary Judgment is mandated against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party has the burden of proof at trial. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment, the Court must construe "all facts and inferences in the light most favorable to the non-moving party." *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012).

B. <u>Plaintiff Failed to Exhaust Administrative Remedies With Respect to the Claims Asserted Against Warden Shaw, Warden Hogans, Warden Rice, and Centurion</u>

    1.    The Prison Litigation Reform Act's exhaustion requirement

Under the Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321, H.R. 3019 (codified as amended in scattered titles and sections of the U.S.C.), prisoners are required to exhaust available administrative remedies before filing a conditions-of-confinement lawsuit:

> No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

The PLRA's exhaustion requirement protects administrative agency authority, promotes efficiency, and produces "a useful record for subsequent judicial consideration." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). A prisoner's failure to exhaust available administrative remedies undermines these purposes.

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . .

*Woodford*, 548 U.S. at 95.

Dismissal is mandatory where a prisoner fails to properly exhaust available administrative remedies before filing suit. *Ross v. Blake,* 136 S. Ct. 1850, 1856 (2016); *see Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012). A court may not excuse a prisoner's failure to exhaust, even to take special circumstances into account. *Ross,* 136 S.Ct. at 1856-57.

Failure to exhaust available administrative remedies is an affirmative defense. Defendants have the burden of demonstrating that Plaintiff failed to exhaust. *Jones v. Bock,* 549 U.S. 199, 216 (2007). At the summary judgment stage, this means Defendants "must establish beyond peradventure all of the essential elements of the defense of exhaustion to warrant summary judgment in their favor." *Dillon v. Rogers,* 596 F.3d 260, 266 (5th Cir. 2010). "[J]udges may resolve factual disputes concerning exhaustion without the participation of a jury." *Id.* at 272.

2.   MDOC's Administrative Remedy Program

Correctional facilities under the authority of MDOC have adopted an administrative review procedure (ARP) as allowed by Miss. Code Ann. § 47-5-801. *See* MDOC Inmate Handbook, Ch. VIII, Administrative Remedy Program.[3] The ARP is a "formal two-step process for handling inmate grievances." *Yankton v. Epps,* 652 F. App'x 242, 245 (5th Cir. 2016) (citing Miss. Code § 47-5-801, *et seq.*; *Wilson v. Epps,* 776 F.3d 296, 300 n.2 (5th Cir. 2015)).

> "[T]o ensure their right to use the formal [ARP]," inmates "must make their request to the Adjudicator in writing within a 30 day period after an incident has occurred." [Inmate Handbook, MDOC, ch. VIII, sec. IV.] They are, however, discouraged from making repetitive requests and "are encouraged to continue to seek solutions to their concerns through informal means." [*See id.*]
>
> Prior to the "first step" of this procedure, the Adjudicator screens the request to determine whether it meets specified criteria. [*See id.* at ch. VIII, sec. V.] If a request fails to meet that criteria, the Adjudicator will reject it and notify the inmate via Form ARP-1. [*See id.* at ch. VIII, sec. VI.] If the request meets the criteria, however, the Adjudicator will

---

[3] http://www.mdoc.ms.gov/Inmate-Info/Documents/CHAPTER_VIII.pdf

> accept it into the ARP, and the request will then proceed to the first step. At the first step, the appropriate MDOC official receives the request via Form ARP-1 and provides a "first-step response" to the request via Form ARP-2. If the inmate is satisfied with this first-step response, he does not need to do anything further. If unsatisfied, however, the inmate may then proceed to the "second step" by indicating as much on the same Form ARP-2. At the second step, another appropriate MDOC official, such as a warden, provides the "second-step response" via Form ARP-3. If unsatisfied with the second-step response, the inmate may then bring a claim in court. [*See* Inmate Handbook, ch. VIII, sec. IV.]

*Id.*

    3.    Plaintiff exhausted the claims against Lieutenant Cooney and Unit Manager Donald

Defendants have presented the Affidavit of Tina Bolden, Coordinator of the ARP at EMCF, and the relevant grievances submitted to the ARP by Plaintiff (ECF No. 39-2, at 1-17) concerning the events on September 14, 2016, and November 30, 2016. The Court concludes that Plaintiff exhausted claims against Lieutenant Cooney and Unit Manager Donald. Plaintiff did not exhaust administrative remedies with respect to the claims advanced against Warden Shaw, Warden Hogans, Warden Rice, and Centurion.

    a.    Grievances regarding September 14, 2016

Plaintiff's First Step grievance regarding the events of September 14, 2016, provided:

> On September 28, 2016, I the writer was escorted to the Unit Manger Donald office by Captain Jones. Captain Jones asked unit manager Donald what was my status as far as being locked down and why I haven't received a RVR or Detention Notice for being in lockdown. Unit Manger

7

> Donald stated that I didn't need no paper work and that he was in control and that he move me when he want to and that I was under investigation by him. Later that day I tried to ask him about why I had no water in my cell he stood in the middle of the dayroom floor and stated to me the writer to not call his name no more and that I was stuck in the hole until he say so and that I would never get out as long as he was unit manager over housing 5. I want to know why I am in the hole who placed me there and for how long and can I be transferred to another facility were [sic] I can be properly treated.

(ECF No. 39-2, at 3).

Unit Manager Donald drafted the ARP First Step response for the events of September 14, 2016, which provided:

> An investigation was conducted that involved offender Tyrone Walker K5384. On 9-14-16 Offender Walker was involved in the stabbing of offender Nathan Hogan. Due to his actions and participation in this incident he will remain on Special Housing Unit 5 Alpha as a long-term offender.

*Id.* at 5.

Plaintiff was not satisfied with this response and proceeded to Step Two of the ARP, asking: "Based on what kind of investigation on who statement." *Id.* The Second Step ARP response from Warden Shaw provided:

> As stated in your first step response, Unit Manager Donald explained to you in detail why you are on lockdown. An investigation was conducted and was determined that you were involved in the stabbing of another inmate, offender Nathan Hogan. Due to your participation in this incident you will remain on special housing as a long term offender.

*Id.* at 8.

      b.      Grievances regarding November 30, 2016

Plaintiff's First Step grievance regarding the events of November 30, 2016, provided:

> On November 30, 2016, I the writer was sprayed with a chemical agent by Lieutenant [Cooney] and was left in my cell for two hours before being removed for medical. I was sprayed in my face while talking to the mental health counselor Mr. Pickering. When Lt. [Cooney] returned to extract me from my cell he became angry and aggressive toward me saying that he was going to teach me a lesson. As I was existing my cell to go to medical Lt. [Cooney] slammed me to the floor in the green mile hallway and started punching me in the face while I was down on the floor this was witnessed by case manager Williams and mental health Pickering. Lt. [Cooney] then placed his knee on my neck with pressure while Officer Spartermn beat me in my face these officer took turn beating me. After they were finished Unit Manager Anderson told them to place me in a hogtie with my leg pulled back to my back hurting my legs as I was down they then forced me in a restraint chair in a hog tied. Then Officer Ellis Officer Stewart, Sgt. Edwards took me to intake where they beat me some more. Tieing [sic] my arms and hands and my neck to the chair for 4 hours. These officers deprived with no justification no authorized permission from a qualified personnel to place me in a restraint chair. My due process was violated by these officers my rights to medical was deprived these officers. I am seeking to have this incident investigated and these officer punished to the max for their unprofessional act. I fear that due to me seeking this administrative remedy my life would be in danger and that my future rights would be denied. I am seeking to move to a state prison.

(ECF No. 41-2, at 5).

The ARP First Step response regarding the events of November 30, 2016, stated:

> At this time it is your word against that of Lt. Cooney. At which time you are able to provide further proof I will re-examine the matter.

*Id.* at 6.

Plaintiff was not satisfied with this response and proceeded to Step Two of the ARP, stating: "There was serval [sic] staff incident wrote on Lt [Cooney] for punching me in my face." *Id.* at 6. The Second Step ARP response from Warden Shaw provided:

> On November 30, 2016 you were threatening staff with unknown objects out of your tray slot. You did assault Officer Ellis when he was securing your tray slot. Use of force was used on you that day because you were combative and threatening to assault staff again. You were not denied medical; you were seen by HSA Little.

*Id.* at 7.

        c.    Unit Manager Donald and Lieutenant Cooney

Defendants do not dispute that Plaintiff exhausted "his claims against Unit Manager Donald to the extent he claims Donald was responsible for his assignment to administrative custody following his September 14, 2016, altercation with other inmates on his housing zone." (ECF No. 42, at 8). Defendants do not dispute that Plaintiff exhausted his claims against Lieutenant Cooney "to the extent he claims Cooney used excessive force against him in the incident occurring on November 30, 2016." *Id.* at 8. The claims asserted against Unit Manager Donald and Lieutenant Cooney will proceed. A deadline for submitting dispositive and Daubert-type motions regarding these claims will be set.

      d.      Warden Shaw, Warden Hogans, and Warden Rice

Plaintiff alleges that Warden Shaw violated his due process rights by "respond[ing] to my complaint without a proper investigation." (ECF No. 12, at 1) (citing to the Second Step response regarding the November 30, 2016, events). Plaintiff alleges that Warden Shaw "was aware what was going on. He could have intervened. He was standing in the doorway while all this was going on [on November 30, 2016]." (ECF No. 48, at 22).

Plaintiff is suing Warden Norris Hogans because "[h]e was the warden. He was standing there too [on November 30, 2016]." *Id.* Plaintiff is suing Warden Ray Rice because he was a warden and allegedly responsible for the numerous alleged violations of MDOC policies that occurred. (ECF No. 48, at 25). Plaintiff claims that Wardens Shaw, Hogans, and Rice were "aware of the fact that Lt. Richard Cooney is the source of unreasonable conflicts and altercations with inmates and other employees. (ECF No. 1, at 10).

Plaintiff did not name Wardens Shaw, Hogans, or Rice in his administrative grievances. While "exhaustion [under the PLRA] is not per se inadequate simply because an individual later sued was not named in the grievances," *Jones v. Bock,* 549 U.S. 199, 203 (2007), "prisoners are generally required to follow the procedures adopted by the state prison." *Johnson v. Johnson,* 385 F.3d 503, 517 (5th Cir. 2004). [T]he specificity requirement should be interpreted in light of the grievance rules of the particular prison system . . . ." *Id.*

11

MDOC's ARP procedures informed Plaintiff that he "should present as many facts as possible to answer all the questions who, what, when, where, and how concerning the incident." *See* MDOC Inmate Handbook, Ch. VIII, Administrative Remedy Program.[4] It has been held that this language "effectively, . . . requires that all officials involved be named or at least referenced by description." *Holton v. Hogan,* No. 3:16-cv-625-LRA, 2017 WL 3908208, *3 (S.D. Miss. July 26, 2017), report and recommendation adopted, No. 3:16-CV-625-HTW-LRA, 2017 WL 3903558 (S.D. Miss. Sept. 5, 2017) (finding failure to exhaust claims against commissioner and warden where prisoner complained generally about medical care in his grievances but did not name the commissioner or warden in his grievances).

The claims asserted in this lawsuit against Wardens Shaw, Hogans, and Rice were not raised in any of Plaintiff's four grievances or were only alluded to so minimally as to be insufficient to provide fair notice to prison officials of Plaintiff's specific complaints against these Wardens and time and opportunity to address the complaints internally. *See Curry v. Scott,* 249 F.3d 493, 505 (6th Cir. 2001) (holding that a grievance specifically complaining of a beating at the hands of one guard did not suffice to exhaust a failure-to-protect claim against another guard, not mentioned in the grievance, who stood by and watched); *Sears v. Shaw,* No. 5:14-cv-65-DCB-JCG, 2016 WL 1068745 (S.D. Miss. Feb. 1, 2016), report and recommendation adopted, 2016 WL 1069094 (grievance did not provide notice of failure to protect claim); *Hayes v. Dunn,* No. 3:14-cv-468-LRA, 2016 WL 884654

---

[4] http://www.mdoc.ms.gov/Inmate-Info/Documents/CHAPTER_VIII.pdf

(S.D. Miss. Mar. 7, 2016) (grievance regarding prisoner's medical treatment for mental illness insufficient to exhaust specific claim that prisoner was given Haldol shots when he was allergic to Haldol); *Marsalis v. Cain*, Civil Action No. 12-0799-BAJ-RLB, 2014 WL 51215 (M.D. La. Jan. 7, 2014), report and recommendation adopted, Civil Action No. 12-0799-BAJ-RLB, 2014 WL 407457 (finding no fair notice where claims "were only alluded to so minimally as to be insufficient to provide fair notice to prison officials of the plaintiff's specific complaints").

      e.    Centurion

The Court also concludes that Plaintiff did not exhaust administrative remedies with respect to the claims against Centurion. (ECF No. 48, at 28). Centurion is not mentioned in any of Plaintiff's four grievances. In his Complaint, Plaintiff now claims that Centurion "routinely ignore[d] written requests for intervention." (ECF No. 1, at 9). Plaintiff now also alleges that Centurion violated his rights by not allowing him to have an MRI. Plaintiff did not make these claims in his grievances. In the grievances, Plaintiff complained about the wardens not taking him directly to medical. Plaintiff's only statement regarding medical in his grievances was: "my rights to medical was deprived these officers." (ECF No. 41-2, at 5). Plaintiff did not provide fair notice to prison officials that he was asserting that Centurion was ignoring his requests for medical treatment, and denying him and MRI.

Defendants' competent summary judgment evidence establishes beyond peradventure that the ARP was available to Plaintiff, and Plaintiff did not exhaust

the claims against Warden Shaw, Warden Hogans, Warden Rice, and Centurion. The claims against these Defendants are barred by 42 U.S.C. §1997e(a) and must be dismissed.

C.  Centurion's Motion to Dismiss (ECF No. 34)

Because Plaintiff's claims against Centurion are barred by 42 U.S.C. §1997e(a), the Court will deny Centurion's Motion to Dismiss (ECF No. 34) as moot.

CONCLUSION

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the Motion for Summary Judgment based on Plaintiff's Failure to Exhaust Administrative Remedies (ECF No. 41), filed by Defendants Warden Frank Shaw, Warden Norris Hogans, and Warden Ray Rice, is **GRANTED**. The claims against Shaw, Hogans, and Rice are dismissed without prejudice, and Shaw, Hogans, and Rice are dismissed from this suit.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that Defendant Centurion of Mississippi, LLC's Motion for Summary Judgment based on Plaintiff's Failure to Exhaust Administrative Remedies (ECF No. 43) is **GRANTED**. The claims against Centurion are dismissed without prejudice, and Centurion is dismissed from this suit.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that Centurion of Mississippi, LLC's 12(b)(6) Motion to Dismiss (ECF No. 34) is **DENIED AS MOOT**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that the deadline for filing dispositive and Daubert-type motions with respect to the claims against Unit Manager Tony Donald and Lieutenant Richard Cooney is **February 4, 2018**.

**SO ORDERED**, this the 4th day of December, 2017.

*s/ John C. Gargiulo*
JOHN C. GARGIULO
UNITED STATES MAGISTRATE JUDGE